# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * * * * *
SAHRA KHAN, *mother of minor, M.A.K.*, *
*
Petitioner, *
*
v. *
*
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
*
Respondent. *
* * * * * * * * * * * * * * * * * * * * * * * * *

No. 24-1098V
Special Master Christian J. Moran

Filed: September 2, 2026

Isaiah Kalinowski, Bosson Legal Group, Fairfax, VA, for petitioner;
Ryan Miller, United States Dep't of Justice, Washington, DC, for respondent.

**DECISION DISMISSING CASE FOR FAILING TO FILE WITHIN THE STATUTE OF LIMITATIONS AND FAILING TO ESTABLISH EQUITABLE TOLLING**[1]

Sahra Khan alleges that a hepatitis A vaccine given to her son, M.A.K. caused him to suffer aplastic anemia. The vaccination was given in March 2021, and Ms. Khan filed her petition on July 17, 2024. The parties agree that filing the petition on July 17, 2024 was outside the period the statute of limitations allows.

Ms. Khan seeks equitable tolling of the Vaccine Act's 36-month statute of limitations. Although the circumstances surrounding M.A.K.'s illness and treatment were unquestionably difficult, equitable tolling requires more than hardship. Ms. Khan must establish both reasonable diligence in pursuing the claim and an extraordinary circumstance that prevented timely filing. Because the record does not establish either requirement, equitable tolling is not warranted. Thus, the case is dismissed.

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

**Procedural History**

On July 17, 2024, Sahra Khan on behalf of her minor son, M.A.K., filed a pro se petition alleging that a hepatitis A vaccination administered on March 18, 2021 caused M.A.K. to develop hepatitis-associated severe aplastic anemia. Ms. Khan supported her claim by filing medical records. Exhibits 4-6, filed in January 2025.

In May 2025, Attorney Isaiah Kalinowski became counsel of record for Ms. Khan. On behalf of Ms. Khan, Attorney Kalinowski submitted more medical records. Exhibits 6-11, filed July 21, 2025.

The Secretary reviewed this material and recommended against an award of compensation. Resp't's Rep., filed Oct. 27, 2025. The Secretary maintained that Ms. Khan could not establish that the hepatitis A vaccine was the cause-in-fact of M.A.K.'s aplastic anemia by meeting the three elements set forth in Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005). For the third Althen element, the Secretary questioned whether Ms. Khan could establish a medically appropriate temporal relationship between vaccination and onset, noting that the medical records placed onset of aplastic anemia in *August 2021*, (approximately four and one-half months after vaccination). Resp't's Rep., filed Oct. 27, 2025, at 15–16. To address that issue, the undersigned directed Ms. Khan to identify Vaccine Program cases supporting a similarly lengthy interval between vaccination and onset. Order, filed Oct. 29, 2025.

On the same day the order issued, Ms. Khan requested a status conference. Pet'r's Mot. for Status Conf., filed Oct. 29, 2025, at 1. In the status conference, held on November 10, 2025, Ms. Khan asserted the onset reflected in the contemporaneous medical records was not accurate, rather, M.A.K. began suffering from aplastic anemia in *April 2021* (one month after vaccination). Order, issued Nov. 10, 2025. Ms. Khan's assertion of an earlier onset moved the first symptom or manifestation of onset such that the July 17, 2024 petition fell outside the Vaccine Act's 36-month limitations period. Ms. Khan acknowledged this consequence at the November 10, 2025 status conference and recognized that she would likely need to establish equitable tolling for her claim to proceed. Accordingly, the undersigned suspended the other deadlines and directed the parties to brief equitable tolling. Id.

Ms. Khan requested equitable tolling. Ms. Khan acknowledged that M.A.K. began experiencing fatigue in approximately April 2021 and that fatigue is recognized as a symptom of aplastic anemia. Pet'r's Mem., filed Jan. 9, 2026, at 4.[2] Ms. Khan therefore acknowledged that, under a strict application of 42 U.S.C. § 300aa-16(a)(2), the limitations period expired in approximately April 2024. Nevertheless, Ms. Khan argued that equitable tolling should permit the July 17, 2024 petition to proceed.

Ms. Khan supported her request principally with her declaration concerning the circumstances surrounding M.A.K.'s illness and treatment. See Pet'r's Mem. Ms. Khan averred

[2] The remainder of this decision assumes that M.A.K.'s fatigue in April 2021 was a manifestation of aplastic anemia because this is Ms. Khan's best argument.

that around the time M.A.K.'s fatigue began in April 2021, her father-in-law died of cancer, and the resulting disruption to the family left her less attentive to her then-six-year-old son's nonspecific symptoms. By July and early August 2021, M.A.K.'s condition had become more concerning. In early August, he developed petechiae, dark urine, and gray bowel movements, prompting Ms. Khan to seek medical care. Ms. Khan took M.A.K. to the emergency room on August 9, 2021, where he was admitted and subsequently diagnosed with hepatitis-associated severe aplastic anemia requiring extensive treatment. Id. at 2–3; Ex. 15 ¶¶ 4–8.

In November 2021, Ms. Khan's family temporarily relocated from Harrisburg, Pennsylvania, to Philadelphia while M.A.K. underwent a bone-marrow transplant. Because his condition required continued medical monitoring, the family remained in Philadelphia, staying at the Ronald McDonald House, until approximately the end of February 2022. Pet'r's Mem. at 3; Ex. 15 ¶ 9. After returning home, the family continued traveling to Philadelphia monthly for follow-up monitoring throughout most of 2022. Ms. Khan stated that caring for M.A.K. and his siblings during this period left the family focused on "surviving" rather than pursuing litigation. Id.; Ex. 15 ¶¶ 10–11. Ms. Khan also described circumstances occurring closer to the filing of the petition. She gave birth to another child in June 2024 and experienced what she characterized as a difficult postpartum period. Thereafter, she prepared and filed the petition pro se on July 17, 2024.

Ms. Khan explained that, as a layperson unfamiliar with the applicable legal requirements, she believed the three-year limitations period began on August 9, 2021, when M.A.K. first presented for medical care, rather than when his symptoms began. Pet'r's Mem. at 3–4; Ex. 15 ¶¶ 12–13. Relying on <u>K.G. v. Secretary of Health & Human Services</u>, 951 F.3d 1374, 1382 (Fed. Cir. 2020), Ms. Khan maintained that her "nature and sophistication" as M.A.K.'s guardian should be considered in evaluating her diligence. Pet'r's Mem. at 6–8. She argued that her lack of legal sophistication contributed to her mistaken understanding of the limitations period and that, under the circumstances, she nevertheless endeavored to comply with it. Id. at 8; Pet'r's Reply at 2–3.

The Secretary agreed that equitable tolling is available under the Vaccine Act but maintained that Ms. Khan had established neither reasonable diligence nor an extraordinary circumstance that prevented timely filing. <u>See</u> Resp't's Resp., filed Feb. 6, 2026, at 7–16. The Secretary argued that M.A.K.'s ongoing medical needs and follow-up care did not establish an extraordinary circumstance merely by virtue of their demands, reasoning that such medical needs were contemplated in establishing the Vaccine Act's 36-month limitations period. Resp't's Resp. at 13. Even assuming such caregiving demands could qualify, the Secretary disputed that M.A.K.'s continuing care was so demanding as to prevent timely filing emphasizing that his follow-up care decreased substantially over time. Monthly visits continued through October 2022, then quarterly visits occurred from November 2022 through November 2023, and then visits thereafter occurred approximately every six months. Id. at 4. The Secretary likewise maintained that Ms. Khan's other asserted hardships did not excuse the untimely filing: her father-in-law's death occurred near the beginning of the limitations period, while her pregnancy and June 2024 childbirth occurred after the limitations period had already expired in April 2024. Id. at 11–12.

The Secretary also rejected Ms. Khan's contention that her lack of legal sophistication supported tolling. Responding to her reliance on K.G., the Secretary emphasized that the petitioner there suffered from significant mental incapacity, whereas Ms. Khan was not incapacitated and had demonstrated her ability to draft and file the petition pro se. Id. at 13–14. The Secretary thus characterized Ms. Khan's difficulty as a misunderstanding of the limitations rule, rather than an incapacity or other extraordinary circumstance that prevented timely filing. He argued that, just as ignorance of a potential Vaccine Act claim does not establish diligence, a misunderstanding of how the limitations period operates does not excuse a failure to pursue a claim within the statutory period. Id. at 7–10.

Ms. Khan defended her position. See Pet'r's Reply, filed Feb. 19, 2026. Ms. Khan clarified that she did not rely independently on either her father-in-law's death or her June 2024 childbirth as the extraordinary circumstance warranting tolling. Rather, she maintained that the principal extraordinary circumstances were M.A.K.'s severe illness and treatment, including his bone-marrow transplant and continued medical monitoring, and the resulting disruption to the family. Id. at 5–6. Ms. Khan further argued that the Secretary had misapplied K.G.'s mental-incapacity standard because she did not contend that her own mental incapacity prevented timely filing. Id. at 6–7. Instead, she maintained that the effectiveness of a guardian should be evaluated under the particular circumstances presented, including the guardian's sophistication. Id. at 3–4, 6–7. Ms. Khan also clarified that she was not seeking application of a discovery rule or minority tolling and was not contending that ignorance of the Vaccine Program itself excused the late filing. Id. at 3–4. Finally, Ms. Khan maintained that the remedial purposes of the Vaccine Act favored application of equitable tolling under the circumstances presented. Id. at 7–8.

The matter is now ready for adjudication.

## Analysis

The analysis is contained in two steps. First, and uncontroversially, there is a finding that Ms. Khan submitted her petition after the period set forth in the statute of limitations expired. Second, and more substantially, there is a finding that Ms. Khan has not presented sufficient facts to entitle her to the benefits of equitable tolling.

### I. The Petition Was Filed Beyond the Statute of Limitations

The Vaccine Act provides that, when a vaccine-related injury is alleged, "no petition may be filed" more than 36 months after "the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2). The Federal Circuit has explained that either the first symptom or manifestation of onset may trigger the statute, whichever occurs first. Markovich v. Sec'y of Health & Hum. Servs., 477 F.3d 1353, 1357 (Fed. Cir. 2007). The relevant event is one objectively recognizable by the medical profession at large; the claimant need not understand at that time that the symptom is vaccine-related. See Cloer v. Sec'y of Health & Hum. Servs., 654 F.3d 1322, 1335, 1338-40 (Fed. Cir. 2011) (en banc); Carson v. Sec'y of Health & Hum. Servs., 727 F.3d 1365, 1368 (Fed. Cir. 2013).

There is little dispute concerning this issue. Ms. Khan now acknowledges that M.A.K. began experiencing fatigue in approximately April 2021 and further acknowledges that fatigue is a recognized symptom of aplastic anemia. She therefore proposes April 2021 as the onset of the injury.

Accordingly, the 36-month limitations period expired in approximately April 2024. Ms. Khan filed the petition on July 17, 2024, approximately three months later. The petition therefore was not filed within the period prescribed by section 16(a)(2). Ms. Khan herself acknowledges that, under a "strict application" of section 16(a)(2), the limitations period expired in approximately April 2024, before the petition was filed. Pet'r's Mem. at 4, filed Jan. 9, 2026. She instead asks that the limitations period be equitably tolled to permit her claim to proceed.

## II. Ms. Khan Has Not Established a Basis for Equitable Tolling

The Vaccine Act's limitations period *is* subject to equitable tolling. Cloer, 654 F.3d at 1340-44. However, the availability of the doctrine does not mean that every late petition presenting sympathetic circumstances qualifies for relief. The Federal Circuit has emphasized that equitable tolling is to be used "sparingly" and in extraordinary circumstances. Id. at 1344-45.

A litigant requesting equitable tolling must establish two distinct elements: "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." K.G., 951 F.3d at 1379 (Fed. Cir. 2020); see also Holland v. Florida, 560 U.S. 631, 649 (2010). The requirements are distinct, and a request for equitable tolling may be denied based upon the failure to establish one without resolving the other.

The Federal Circuit has cautioned, however, that equitable tolling remains a fact-specific inquiry. The diligence required is "reasonable diligence," not maximum feasible diligence, and must be assessed in light of "all relevant facts and circumstances." K.G., 951 F.3d at 1379, 1382. K.G. further instructs that a claimant need establish diligence only during the period in which the asserted extraordinary circumstance existed. Id. at 1379. Thus, the question is not whether Ms. Khan pursued the claim at every possible opportunity or acted with perfect diligence throughout the three-year limitations period. Rather, the question is whether, considering the circumstances upon which she relies for tolling, Ms. Khan pursued M.A.K.'s legal rights with reasonable diligence during the relevant period and whether circumstances outside her control prevented timely filing. Ms. Khan has not made that showing.

### A. Diligent Pursuit of Rights

Ms. Khan's arguments concerning the two aspects of equitable tolling are not a model of clarity. From her opening memorandum, it is difficult to discern which facts Ms. Khan offers to establish diligence and which she offers to establish that extraordinary circumstances prevented her from timely filing. Her Reply provides some clarification. There, Ms. Khan explains that she identified several circumstances that hindered her ability to timely file, and of those, the one that "most bore upon Petitioner's ability to timely file" was the "disruption caused by M.A.K.'s

injury itself and its involved treatment," including his bone-marrow transplant, monitoring, medication, and the vigilance required by his treatment. Pet'r's Reply at 5.

Ms. Khan's own characterization therefore supports treating the demands associated with M.A.K.'s illness and treatment principally as alleged *extraordinary circumstances*, rather than as conduct demonstrating diligent pursuit of his legal rights. That treatment is also consistent with the distinction drawn in Menominee, where the Supreme Court explained diligence concerns "those affairs within the litigant's control," whereas extraordinary circumstances concern matters outside the litigant's control. Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 256–57 (2016). M.A.K.'s becoming severely ill, requiring a bone-marrow transplant, and needing extensive follow-up care plainly were not matters within Ms. Khan's control.

Whether those circumstances were sufficiently extraordinary and prevented timely filing is addressed below. The separate question here is what Ms. Khan did, within the circumstances she faced, to pursue M.A.K.'s legal rights.

Even accepting that M.A.K.'s diagnosis, transplant, and intensive early treatment substantially constrained Ms. Khan's ability to pursue a legal claim, the record still does not support a finding of reasonable diligence. Diligence in obtaining medical treatment does not, by itself, establish diligence in pursuing legal rights.[3] See Hodge v. Sec'y of Health & Hum. Servs., No. 09-453V, 2015 WL 9685916, at *8 n.8 (Fed. Cl. Spec. Mstr. Dec. 21, 2015). Hodge illustrated that distinction by contrasting the pursuit of medical care with efforts directed toward pursuing legal remedies, citing Mojica v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 96 (2011), as an example of the latter. Id. In Mojica, counsel had prepared the petition and entrusted it to an overnight delivery service for delivery before the limitations period expired, but the courier lost the package. Mojica, 102 Fed. Cl. at 99–102. Thus, Mojica involved concrete efforts directed toward timely pursuing the legal claim itself: the petition had been prepared and its timely filing had actually been attempted.

As with Hodge, the record here contains no comparable claim-directed conduct before the limitations period expired. There is no evidence that, before April 2024, Ms. Khan contacted or attempted to contact an attorney regarding a Vaccine Act claim, began preparing a petition, gathered records for purposes of pursuing the legal claim, contacted the Court or the Department of Justice, attempted a filing, or otherwise took a concrete step toward investigating, pursuing, or preserving M.A.K.'s Vaccine Act claim before the limitations period expired.

Ms. Khan did eventually take steps to pursue the claim, but not until after the limitations period had expired. She educated herself about the Vaccine Program, prepared the petition without counsel, and filed it pro se on July 17, 2024. Those efforts demonstrate that Ms. Khan was capable of independently investigating the Program and taking concrete steps to pursue

---

[3] Ms. Khan seemingly does not directly argue that her pursuit of MAK's treatment was her diligence, as was argued in Hodge. Rather she argues that MAK's treatment indirectly prevented her legal diligence on the claim.

M.A.K.'s claim. They do not, however, fill the absence of any such efforts *before* the limitations period expired.

Ms. Khan offers a separate explanation for why she filed when she did: she misunderstood the applicable deadline. See Pet'r's Mem. at 3-4, 8; Pet'r's Reply at 3. She knew that a three-year limitations period applied but believed that the three years ran from M.A.K.'s August 9, 2021 emergency-room visit rather than from the onset of his fatigue in April 2021. Pet'r's Mem. at 3–4. Thus, Ms. Khan believed that she remained within the limitations period when she filed on July 17, 2024. That explanation may account for the timing of her filing, but it does not demonstrate diligent pursuit of the claim before the actual deadline. Instead, it presents a separate question—whether Ms. Khan's lack of legal sophistication and resulting misunderstanding of the limitations rule affect the diligence analysis.

Ms. Khan attempts to address the absence of claim-directed conduct by relying on her lack of legal sophistication, and offering that ought to be considered when evaluating the diligence of a parent or guardian. Citing K.G., Ms. Khan notes that a guardian's "nature and sophistication" may be relevant to the diligence inquiry. Pet'r's Mem. at 7–8; Pet'r's Reply at 2–3. Specifically, Ms. Khan states that her lack of legal sophistication "frustrated her ability to formulate and file her petition" and caused her to proceed under the mistaken belief that she would comply with the statute of limitations so long as she filed within three years of M.A.K.'s August 2021 hospitalization. Pet'r's Mem. at 7. She further maintains that she "acted diligently with the knowledge and understanding that she possessed" and "endeavored to comply with the statute." Pet'r's Reply at 2–3.

But K.G. addressed a materially different circumstance. There, the claimant was an incapacitated adult suffering from significant mental impairments, and her sister served as her legal guardian during a portion of the relevant period. K.G., 951 F.3d at 1376–77. Thus, K.G. does not establish that a litigant's lack of legal sophistication, standing alone, constitutes diligence or excuses a mistaken understanding of the limitations period. Rather, the guardian's sophistication was one consideration bearing on whether an incapacitated claimant had an effective representative capable of protecting her legal rights notwithstanding her own inability to act. That concern is not present here. Ms. Khan was M.A.K.'s parent and representative throughout the relevant period, and the record does not suggest that she was unable to act on his behalf, that their relationship or ability to communicate impeded her ability to do so, or that any conflict of interest inhibited her from pursuing his claim.

Ms. Khan's lack of legal sophistication may explain why she misunderstood the limitations rule, but it does not explain why she could not have investigated that rule earlier. She was capable of learning about the Program herself and could have looked up the applicable limitations rule or sought assistance in determining when the limitations period began. Yet, the record contains no indication that she did so. Here, her own account shows that she believed she knew when the limitations period began and was mistaken, while the record identifies no effort before expiration to verify that understanding. Thus, even accounting for Ms. Khan's lack of legal sophistication, her mistaken understanding of the limitations period does not establish that

she diligently pursued M.A.K.'s claim.[4] See Phillips v. Sec'y of Health & Hum. Servs., No. 16-1046V, 2017 WL 1293464, at *4 (Fed. Cl. Spec. Mstr. Apr. 6, 2017) ("[L]ack of information essential to a Vaccine Act claim is not sufficient, in itself, to justify equitable tolling"); Maack v. Sec'y of Health & Hum. Servs., No. 12-354V, 2013 WL 4718924, at *5 (Fed. Cl. Spec. Mstr. Aug. 6, 2013) ("A petitioner's lack of knowledge of the law does not constitute an extraordinary circumstance permitting equitable tolling"); Anderson v. Sec'y of Health & Hum. Servs., No. 12-16V, 2013 WL 691003, at *4 (Fed. Cl. Spec. Mstr. Jan. 29, 2013) ("It is well-established that a petitioner's lack of knowledge of the law does not constitute an extraordinary circumstance justifying equitable tolling").

The undersigned does not treat Ms. Khan's legal misunderstanding as evidence of bad faith or a complete absence of effort. It appears to have been a genuine mistake by a pro se parent. But equitable tolling requires more than a good-faith mistake about the deadline. Ms. Khan's statement tends to show that the timing of her filing resulted at least in substantial part from her belief that the deadline had not yet expired, rather than from an external circumstance that prevented her from filing earlier.

The relatively short period of untimeliness does not alter this conclusion. Although the length of the delay is relevant to the case-specific diligence inquiry, it must be considered together with Ms. Khan's conduct before the limitations period expired. See Sohn v. Sec'y of Health & Hum. Servs., No. 24-1493V, 2026 WL 752263, at *4 (Fed. Cl. Spec. Mstr. Feb. 6, 2026) (noting dismissal of petitions untimely "even if by a de minimis amount"); see Chitlik v. Sec'y of Health & Hum. Servs., No. 2025-1804, 2026 WL 2288200, at *3 (Fed. Cir. Aug. 10, 2026). In Chitlik, the Federal Circuit found reasonable diligence where the pro se petitioner mailed his completed petition by certified first-class mail ten days—eight business days—before the statutory deadline, using a delivery method that he could reasonably expect would result in timely filing. Id. at *3-4. The Federal Circuit therefore reversed the determination that the petitioner had failed to exercise reasonable diligence, while leaving for remand whether he had established an extraordinary circumstance that prevented timely filing. Id. at *4. Here, by contrast, Ms. Khan identifies no comparable claim-directed action taken before the limitations period expired. Thus, while the extent of the delay is properly considered, the fact that the petition was only a few months late does not itself supply the diligence otherwise absent from the record.

Considering all of the circumstances, Ms. Khan has not established reasonable diligence in pursuing M.A.K.'s legal rights during the relevant period. This conclusion alone is sufficient to deny equitable tolling because diligence and extraordinary circumstances are distinct requirements. Nevertheless, because Ms. Khan has devoted substantial argument to the

---

[4] Ms. Khan does not dispute this general principle. See Pet'r's Reply at 3 (acknowledging that lack of awareness concerning accrual "does not justify failure to diligently pursue rights during the crucial period").

circumstances surrounding M.A.K.'s illness and because the issue has been fully briefed, the undersigned also considers the second requirement.

**B. Extraordinary Circumstances Preventing Timely Filing**

Ms. Khan also has not established an extraordinary circumstance that prevented timely filing. The requirement is not satisfied merely by identifying circumstances that were unusually difficult; there must be a causal relationship between the asserted extraordinary circumstance and the untimely filing. As the Federal Circuit has explained, the extraordinary-circumstances requirement "necessarily carries with it an element of causation." Aldridge v. McDonald, 837 F.3d 1261, 1265 (Fed. Cir. 2016). The Secretary appropriately recognizes this distinction.

Again, the undersigned does not minimize the severity of M.A.K.'s illness or the burdens it imposed on Ms. Khan and her family. A six-year-old child's diagnosis with severe aplastic anemia, bone-marrow failure, hospitalization, transplant, and prolonged monitoring presented undeniably serious circumstances. It would therefore be both inaccurate and unnecessary to characterize Ms. Khan's experience as involving merely "common" family obligations.

At the same time, the Secretary's broader point has force. The Vaccine Program exists specifically to compensate persons alleging vaccine-related injuries, and Congress nevertheless prescribed a limitations period requiring an injury petition to be filed within 36 months of the first symptom or manifestation of onset. 42 U.S.C. § 300aa-16(a)(2). Thus, medical treatment will necessarily accompany many claims brought under the Program, and the need to obtain medical care, without more, fails to establish an extraordinary circumstance warranting tolling. The relevant question is therefore not whether M.A.K.'s condition was serious or whether his treatment placed substantial demands on his family. It is whether the particular demands associated with his illness and treatment actually prevented Ms. Khan from timely pursuing his claim. The record does not establish that they did.

The contrast with Hodge is instructive. There, the evidence did not merely establish that Mr. Hodge suffered from serious medical and psychiatric conditions or faced substantial difficulties in his daily life. Rather, medical and expert evidence identified a discrete period during which Mr. Hodge—the person responsible for pursuing his own claim—actually lacked the capacity to manage his affairs and protect his legal interests. The experts described significant psychiatric decompensation beginning in July 2007, and one concluded that Mr. Hodge was severely impaired and lacked capacity for approximately one year. The special master thus had evidence connecting the asserted extraordinary circumstance to an identifiable period during which Mr. Hodge was unable to protect his legal interests. Hodge, 2015 WL 9685916, at *19–21, *35–36.

The evidence here is materially different. M.A.K.'s illness was unquestionably severe, and his treatment imposed substantial demands on Ms. Khan. But that severity and illness has not established that *Ms. Khan*—the person responsible for pursuing M.A.K.'s claim—was unable to act on his behalf. The record contains no medical or other evidence identifying a period during which Ms. Khan was unable to manage her affairs, make decisions, or protect M.A.K.'s legal interests. To the contrary, throughout the relevant period she continued to make

consequential treatment decisions, arrange and attend M.A.K.'s medical care, care for her other children, and manage the family's affairs.

That demonstrated ability to act is relevant. In W.J. v. Sec'y of Health & Hum. Servs., the Federal Circuit affirmed the denial of equitable tolling where the parents routinely made medical decisions on behalf of their legally incapacitated son during the relevant period, had no documented strained relationship with him, and faced no conflict of interest inhibiting pursuit of his claim. 93 F.4th 1228, 1240–41 (Fed. Cir. 2024). As in W.J., the record here reflects that Ms. Khan remained able to make decisions and act on M.A.K.'s behalf throughout the relevant period. Those activities do not establish diligence in pursuing a legal claim; they bear on the distinct question whether the asserted circumstances *prevented her from acting at all*. The record does not establish that they did.

Ms. Khan's reply observes that this case should not be reduced to whether Ms. Khan herself satisfied the standard for mental incapacity set forth in Barrett v. Principi, 363 F.3d 1316, 1321 (Fed. Cir. 2004). Hodge applied that standard because the extraordinary circumstance asserted there was the claimant's own mental illness. Here, Ms. Khan relies on a different circumstance: the demands of caring for her seriously ill child. Accordingly, Ms. Khan need not establish that she was herself mentally incapacitated; she must establish that the circumstances she actually invokes prevented her from timely pursuing M.A.K.'s claim. Whatever form the asserted extraordinary circumstance takes, Ms. Khan must establish the required causal connection to the untimely filing. See Aldridge, 837 F.3d at 1265 (explaining that the extraordinary-circumstances requirement "necessarily carries with it an element of causation"). The record does not establish that connection.

The chronology further weighs against such a finding. After the family returned home in early 2022, monthly monitoring eventually decreased to quarterly appointments and then to approximately semiannual appointments. Pet'r's Mem. at 3; Resp't's Resp. at 4. The record does not explain why the demands of M.A.K.'s care prevented Ms. Khan from investigating or preserving the claim, including during this later period when the frequency of his medical monitoring had substantially decreased. Thus, the record does not establish that the demands associated with M.A.K.'s care prevented Ms. Khan from timely pursuing his claim. The other circumstances identified in Ms. Khan's declaration do not fill this gap. Her father-in-law died in April 2021. Ms. Khan initially offered that his death distracted the family and affected her recognition of M.A.K.'s developing fatigue. Pet'r's Mem. at 2. But Ms. Khan expressly clarifies in reply that she does not rely on that event as the extraordinary circumstance that prevented timely filing. Pet'r's Reply at 5. Likewise, Ms. Khan's pregnancy, June 2024 childbirth, and difficult postpartum period cannot establish the necessary causal connection to expiration of the limitations period. If onset occurred in April 2021, the limitations period had already expired by the time Ms. Khan gave birth in June 2024. And once again, critically, Ms. Khan herself recognizes in reply that those circumstances did not independently cause the untimeliness, and that a June 2024 filing would already have been late. Pet'r's Reply at 5-6.

Finally, Ms. Khan's misunderstanding that the limitations period began with the August 9, 2021 emergency-room visit does not constitute the necessary extraordinary circumstance. Section 16(a)(2) is triggered by the first objectively cognizable symptom or manifestation of

onset, regardless of whether the petitioner appreciated its medical significance at the time. See Carson, 727 F.3d at 1368–69. Indeed, the Federal Circuit has recognized that a triggering symptom may be nonspecific and that "it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury." Id. at 1369 (quoting Markovich, 477 F.3d at 1357). Nor does the limitations period await a petitioner's recognition that she possesses an actionable Vaccine Act claim. Cloer, 654 F.3d at 1340, 1344–45. Taken together, these authorities weigh against treating Ms. Khan's good-faith misunderstanding of which manifestation triggered § 16(a)(2) as an extraordinary circumstance warranting tolling. Her misunderstanding may explain why she believed the petition remained timely, but it does not establish a circumstance that prevented timely filing.

Ms. Khan additionally invokes the remedial purposes of the Vaccine Act as supporting equitable relief. The point is not without force. The Act established a compensation system for vaccine-injured persons, and the Federal Circuit has held that its limitations period is nonjurisdictional and subject to equitable tolling. See Cloer, 654 F.3d at 1341–44. But the availability of equitable tolling under the Act does not lessen the requirements for obtaining that relief in a particular case. Indeed, after holding that equitable tolling is available, the Cloer court declined to apply it because the circumstances presented did not warrant tolling. Id. at 1344–45. Thus, even accepting Ms. Khan's reliance on the Act's remedial purposes, those purposes do not independently establish either reasonable diligence or an extraordinary circumstance. The question remains whether Ms. Khan has established the requirements for equitable tolling on the record presented. For the reasons explained above, she has not.

On this record, Ms. Khan has not established either reasonable diligence in pursuing the Vaccine Act claim or an extraordinary circumstance that prevented timely filing. Accordingly, Ms. Khan has not established that the statute of limitations should be equitably tolled. Without this showing, the failure to comply with the statute of limitations means that the case cannot proceed. See W.J., 93 F.4th at 1240–41 (affirming the denial of equitable tolling and dismissal of an untimely Vaccine Act petition). Ms. Khan's case is DISMISSED.

## **Conclusion**

Ms. Khan has cared for her child who developed a medical condition requiring treatment and follow-up. The medical records illustrate her love and devotion to M.A.K. However, Ms. Khan appears to have misunderstood how (or when) to pursue an action to assert that the hepatitis A vaccine caused his aplastic anemia. In such a circumstance, the case can continue if and only if she establishes that the doctrine of equitable tolling can save her case. She has not made such a showing.

The Clerk's Office is directed to dismiss this case unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master